IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

IN RE:

CHRISTOPHER G. MOHR,

    Debtor.

_____

CHRISTOPHER G. MOHR,

    Appellant,

v.

A. STEPHENSON WALLACE, Chapter 7 Trustee,

    Appellee.

1:15-cv-184

Bankruptcy Case

No. 13-11606

## O R D E R

This bankruptcy appeal asks the Court to determine whether the cash surrender value of Appellant-Debtor Chris Mohr's life-insurance policy is part of his bankruptcy estate. Answering that question requires the resolution of another: Was Plaintiff's life-insurance policy a "trust" as used in 11 U.S.C. § 5429(c)(2)? Because the Court finds that it was not a "trust," the cash surrender value of Debtor-Appellant's life-insurance policy is part of his bankruptcy estate. The Court, therefore, **AFFIRMS** the Bankruptcy Court's ruling.

## I.  BACKGROUND

Debtor-Appellant Chris Mohr filed for Chapter 11 bankruptcy on August 30, 2013. (Record on Appeal, Doc. 2, Ex. 1 at 1.) Approximately one year later, his case was converted to a Chapter 7 case. (Id. at 10.) On October 19, 2014, Appellant amended his Schedule C exemptions to include the cash surrender value of his life-insurance policy, valued at $18,000.00, as exempt under O.C.G.A. §§ 33-25-11, 44-13-100. (Id. at 53.) In particular, Appellant claimed the following exempt amounts:

| Law Providing Each Exemption | Value of Claimed Exemption |
| --- | --- |
| O.C.G.A. § 44-13-100(a)(8) | $5,100.00 |
| O.C.G.A. § 44-13-100(a)(9) | $2,000.00 |
| O.C.G.A. § 44-13-100(a)(6) | $5,099.94 |
| O.C.G.A. § 33-25-11 | $6,000.00 |

(Id.) The Bankruptcy Trustee objected to the exemptions claimed under O.C.G.A. §§ 33-25-11 and 44-13-100(a)(8). (Id. at 55-56.)[1]

At a hearing before the Bankruptcy Court, Appellant contended that O.C.G.A. § 35-25-11(c) creates an "exemption" available under state law. Appellant acknowledged that issue was then pending before the Eleventh Circuit. Appellant also argued that 11 U.S.C. § 541(c)(2) excludes the entire value of his life-insurance policy from the definition of property of the estate. (Id. at 68.)

---

[1] The Trustee also objected to another claimed exemption not relevant on this appeal.

2

On October 29, 2015, the Bankruptcy Court issued an Order sustaining the Trustee's objection and finding that the cash surrender value of Appellant's life-insurance policy over and above the amount of $7,099.94 is part of the bankruptcy estate. The Bankruptcy Court noted that the Eleventh Circuit had since held that life insurance policies are not exempt under O.C.G.A. § 35-25-11(c). (Record on Appeal at 74, n.2 (citing In re McFarland, 790 F.3d 1182 (11th Cir. 2015))). The Court also determined that the policy was not a "trust" as used in § 541(c)(2). (Id. at 74-78.)

Appellant moved for reconsideration, which the Bankruptcy Court denied. (Id. at 79-82, 87.) Soon after, he appealed the Bankruptcy Court's Order finding that the policy was not a "trust" under § 541(c)(2). (Id. at 91-92.)

## II. STANDARD OF REVIEW

This appeal asks whether 11 U.S.C. § 541(c)(2) excludes the cash surrender value of a life-insurance policy that is subject to a statutory restriction on transfer from the property of a bankruptcy estate. "The proper construction of the Bankruptcy Code, whether by the bankruptcy court or the district court, is a matter of law," subject to de novo review. In re Meehan, 102 F.3d 1209, 1210 (11th Cir. 1997).

### III. DISCUSSION

"Under federal law, when a debtor files for bankruptcy his property becomes part of the bankruptcy estate and is thereby exposed to creditors. See 11 U.S.C. § 541(a)(1) The debtor, however, may exempt certain types of property from this exposure." McFarland, 790 F.3d at 1185; see 11 U.S.C. § 522(b). Similarly, §§ 541(b) and (c)(2) provide for certain kinds of property that are not property of the bankruptcy estate. This appeal concerns § 541(c)(2).

In full, § 541(c) provides:

> **(c)(1)** Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law-
>
>> **(A)** that restricts or conditions transfer of such interest by the debtor; or
>>
>> **(B)** that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

> **(2)** A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c). The paradigmatic example of a trust under § 541(c)(2) is a spendthrift trust, see Collier on Bankruptcy ¶ 541.27 (16th ed. 2010), but the section applies to other trusts as well. See Patterson v. Shumate 504 U.S. 753 (1992) (finding § 541(c)(2) satisfied by an ERISA-qualified pension plan containing a restriction on transfer).

Appellant argues that the cash surrender value of his life-insurance policy constitutes a beneficial interest in a trust. He contends that O.C.G.A. § 33-25-11(c)[2] restricts the transfer of his interest and thereby creates a trust under 11 U.S.C. § 541(c)(2). He bases his argument on a single authority, In re Meehan, 102 F.3d 1209 (11th Cir. 1997). In his characterization, Meehan "determined that the anti-alienation language found in [O.C.G.A. § 18-4-22(a)] *was all that was*

---

[2] O.C.G.A. § 33-25-11(c):

> (c) The cash surrender values of life insurance policies issued upon the lives of citizens or residents of this state, upon whatever form, shall not in any case be liable to attachment, garnishment, or legal process in favor of any creditor of the person whose life is so insured unless the insurance policy was assigned to or was effected for the benefit of such creditor or unless the purchase, sale, or transfer of the policy is made with the intent to defraud creditors.

5

*needed* to remove [the IRA] as property of the estate." (Appellant's Br., Doc. 5 at 3 (emphasis added)). For Appellant's argument to work, Meehan must have done one of two things: held that O.C.G.A. § 18-4-22(a) *created* a trust or that 11 U.S.C. § 541(c)(2) has no trust requirement. In Appellant's view, "the only logical conclusion was that the language creating the 'trust' referenced in Meehan was contained in the Georgia statute." (Appellant's Br. at 3.) Appellant reasons that the statute at issue here, O.C.G.A. § 33-25-11(c), similarly creates a trust by restricting transfer. This interpretation of Meehan is incorrect.

Appellant confuses two issues: whether there is a beneficial interest in a trust and whether there is a restriction on its transfer. Meehan addressed the latter question and held that the restriction on transfer can be contained in a statute and does not need to be in the trust document. Meehan, 102 F.3d at 1212 ("a restriction is no less enforceable because it is located in the statute rather than in the document").[3] Meehan did not resolve the first question and did not hold that the nonbankruptcy statute at issue, O.C.G.A. § 18-4-22(a), *created* a trust. Instead, the Eleventh Circuit

---

[3] Other circuits recognize this as Meehan's holding. See In re Lowenschuss, 171 F.3d 679, 683 (9th Cir. 1999). In fact, the question of whether restrictions on transfer must be included in the trust document or whether statutory restrictions are alone sufficient is the subject of a circuit split. See id. (recognizing the circuit split); Meehan, 102 F.3d at 1212; In re Yuhas, 104 F.3d 612 (3d. Cir 1997).

assumed the IRA was a trust either because the parties stipulated that it was or because the Internal Revenue Code defines an IRA as a trust. Meehan, 102 F.3d at 1211, n.4 (citing 26 U.S.C. § 408(a)); see In re Allen, No. 10-50827, 2010 WL 395871, at *6, n.13 (Bankr. M.D. Ga. Oct. 4, 2010) (drawing the same conclusion).[4] In other words, Meehan provides no support for Appellant's argument that the cash surrender value of his life-insurance policy is a "beneficial interest . . . in a trust." 11 U.S.C. § 541(c)(2).

Moreover, read in its entirety, § 541(c) is clear that a transfer restriction alone does not create a "trust" under § 541(c)(2). Section 541(c)(1)(A) provides that a debtor's interest in property becomes part of the bankruptcy estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law that restricts or conditions transfer of such interest by the debtor." 11 U.S.C. § 541(c)(1)(A). In other words, as a general rule, transfer restrictions are not enforceable in bankruptcy proceedings. Section 541(c)(2) is an exception that enforces restrictions on transferring a debtor's beneficial interest in a trust. See Collier on Bankruptcy ¶ 541.27 (16th ed. 2010) ("[t]he one

---

[4] Similarly, the Supreme Court appears to have assumed that the ERISA-qualified pension plan at issue in Patterson was a trust because the IRS defines such an account to be a trust. Patterson 504 U.S. at 2247 (quoting 26 U.S.C. § 401(a)(13)(A)).

7

express exception to the general rule that every [restriction on transfer] is invalid is stated in [11 U.S.C. § 541(c)(2)], which preserves restrictions on the transfer of a beneficial interest of the debtor in a trust").

The Third Circuit, in a case involving a debtor's interest in an IRA, explained that § 541(c)(2) contained the following elements:

> (1) the IRA must constitute a 'trust' within the meaning of 11 U.S.C. § 541(c)(2); (2) the funds in the IRA must represent the debtor's "beneficial interest" in that trust; (3) the IRA must be qualified under Section 408 of the Internal Revenue Code; (4) the provision of [the New Jersey statute] stating that property held in a qualifying IRA is 'exempt from all claims of creditors' must be a 'restriction on transfer' of the IRA funds; and (5) this restriction must be 'enforceable under nonbankruptcy law.'

In re Yuhas, 104 F.3d 612, 614 (3d. Cir. 1997). Meehan concerns the fourth requirement above and does not address the first. The Court now turns to whether Appellant's life-insurance policy constitutes a trust.

Trusts come in many varieties, and a precise definition of "trust" in § 542(c)(2) may prove elusive. The Court is satisfied, however, the life-insurance policy at issue here is not one. The Revised Georgia Trust Code of 2010 defines a "trust" as "an express trust or an implied trust but shall not include trusts created by statute or the Constitution of

Georgia." O.C.G.A. § 53-12-2(13). An express trust requires "(1) An intention by a settlor to create such a trust, (2) Trust property, (3) . . . a beneficiary who is reasonably ascertainable at the time of the creation of such a trust or reasonably ascertainable within the rule against perpetuities; (4) A trustee; and (5) Trustee duties specified in writing or provided by law." O.C.G.A. § 53-12-20. An implied trust is either a resulting trust or a constructive trust. O.C.G.A. § 53-12-2(5). Georgia courts have long described a trust as

> an equitable obligation either express or implied resting upon a person by reason of a confidence reposed in him, to apply or deal with property for the benefit of some other person or for the benefit of himself and another or others according to such confidence.

Peach Consol. Props., LLC v. Carter, 628 S.E.2d 680, 682 (Ga. Ct. App. 2006) (quoting Smith v. Francis, 144 S.E.2d 439, 444 (Ga. 1965) (quoting McCreary v. Gewinner, 29 S.E. 960, 963 (Ga. 1898))); see also Trust, Black's Law Dictionary (10th ed. 2014) ("A fiduciary relationship regarding property and charging the person with title to the property with equitable duties to deal with it for another's benefit.").

By contrast, the Georgia Insurance Code defines "insurance" as "a *contract* which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount of benefits upon

9

determinable contingencies." O.C.G.A. § 33-1-2(2) (emphasis added); see also *Insurance*, Black's Law Dictionary (10th ed. 2014) ("A *contract* by which one party . . . undertakes to indemnify another party . . . ." (emphasis added)). Further, the relationship between an insured and an insurer is not confidential or fiduciary in nature. Modern Woodmen of Am. v. Crumpton, 487 S.E.2d 47, 49 (Ga. Ct. App. 1997); State Farm Fire & Cas. Co. v. Fordham, 250 S.E.2d 843, 845 (Ga. Ct. App. 1978); Walsh v. Campbell, 202 S.E.2d 657, 661 (Ga. Ct. App. 1973). Accordingly, a life-insurance policy resembles a typical contract and not a trust.

In conclusion, to be excluded from the bankruptcy estate, § 541(c)(2) requires that the property at issue be "a beneficial interest of the debtor in a trust." 11 U.S.C. § 541(c)(2). The Court agrees with Appellant that O.C.G.A. § 33-25-11 is a nonbankruptcy law that restricts the transfer of the cash surrender value of a life-insurance policy. But that section of Georgia's insurance code does not create a "trust." Because a life-insurance policy is a contract and not a trust, § 541(c)(2) does not apply, and the cash surrender value of the policy is property of the bankruptcy estate under 11 U.S.C. § 541(a)(1).

## IV. CONCLUSION

As discussed above, the Court **AFFIRMS** the Bankruptcy Court's Order sustaining the Trustee's objections. The Clerk shall terminate all deadlines and motions and **CLOSE** this case.

The Clerk shall terminate all deadlines and motions and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 16th day of May 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA